In re GRAND JURY INVESTIGATION.

Appeal of Alexander HARTZELL,
a witness.

No. 76–1569.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) May 4, 1976.

Decided June 22, 1976.

As Amended July 7 and July 9, 1976.

Rehearing and Rehearing In Banc
Denied Aug. 2, 1976.

Certiorari Denied Jan. 10, 1977.
See 97 S.Ct. 755.

Robert St. Leger Goggin, by appointment, Philadelphia, Pa., for appellant; Charles W. Craven, Marshall, Dennehey & Warner, Philadelphia, Pa., of counsel.

Robert E. J. Curran, U. S. Atty., E. D., Pa., David J. McKeon, Sp. Atty., U. S. Dept. of Justice, Organized Crime and Racketeering Section, Philadelphia Strike Force, Philadelphia, Pa., for appellee.

Submitted Under Third Circuit Rule 12(6) May 4, 1976.

Before ALDISERT, GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal from an order of the district court adjudging Alexander Hartzell in civil contempt of court for refusing to obey an order directing him to answer questions propounded by a federal grand jury in the Eastern District of Pennsylvania. We affirm.

Hartzell was convicted, on March 28, 1975, of loansharking. He was sentenced on April 29, 1975 to a five year prison term which on May 3, 1975 he began to serve at the Danbury Federal Correctional Institution. On March 10, 1976, pursuant to a writ of habeas corpus ad testificandum, he was brought before the federal grand jury in Philadelphia and interrogated about the loansharking activities of one Frank Sindone. Sindone was a codefendant in the 1975 trial, but had been acquitted. The interrogation before the grand jury appears to have been directed toward a new indictment of Sindone. Hartzell answered some questions, but invoked the privilege against self-incrimination as to others.

Thereafter the government, with appropriate authority from an Assistant Attorney General, moved before the district court for an order under 18 U.S.C. § 6001–05 granting Hartzell use immunity. On March 22 the district court granted this motion and entered an order directing Hartzell to answer all questions propounded to him relating to possible violations of Title 18 U.S.C. §§ 371, 1962 and 892–94. On March 24 Hartzell was once again brought before the grand jury. He answered some questions, but the interrogation was continued until March 31. On that date he was advised of the grant of immunity and of his right to consult with counsel. He waived counsel and, despite the grant of immunity and the court order directing him to testify, refused to do so.

On April 6 the government petitioned the district court for an order holding Hartzell in civil contempt for refusing to answer the questions posed to him on March 31. On April 9 the court scheduled a hearing on that petition for April 14. During the hearing the district court advised Hartzell of the possible penalties for contempt, and inquired whether he wished to purge himself of contempt of the March 22 order. He also advised Hartzell of the right to counsel. Hartzell waived the assistance of counsel and refused to testify. The court thereupon ordered Hartzell confined until he testified, or for a maximum of 18 months. *See* 28 U.S.C. § 1826(a)(2). The order also provides that the running of Hartzell's federal sentence on his 1975 conviction is suspended during the period of his civil confinement.

After entering this order the district court advised Hartzell of his right to appeal in forma pauperis, and at his request directed the Clerk to file a notice of appeal on his behalf. Counsel was appointed for the appeal.

■ Hartzell's first contention on appeal is that the March 22 order directing him to

testify was void because it was entered without any showing by the government of relevance of the proposed interrogation to a legitimate grand jury investigation. *See In re Grand Jury Impaneled January 21, 1975,* 529 F.2d 543 (3d Cir. 1976), *cert. denied,* 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976); *In re Grand Jury Proceedings (Schofield I),* 486 F.2d 85 (3d Cir. 1973). This contention, however, was never presented to the district court. That alone should preclude its consideration on appeal, for although Hartzell was unrepresented, and thus may not have been fully aware of the defenses which might have been available in the contempt proceeding, he made an informed choice to waive counsel. But even if the district court had been asked to consider the point, on the record in this case it would have to conclude that the affidavit in support of the government's application for the March 22 order sufficiently established relevancy and proper purpose. *See In re Grand Jury Proceedings (Schofield II),* 507 F.2d 963, 966–67 (3d Cir.), *cert. denied,* 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975); *In re Grand Jury Impaneled January 21, 1975, supra,* 529 F.2d at 548. That affidavit was before the court in the contempt proceeding.

■ Hartzell next argues that he did not receive adequate notice of the contempt hearing. As with the *Schofield I* objection, this contention was not urged in the district court and should, perhaps, for that reason be disregarded. Nevertheless, we have examined the record to determine whether, either from lack of time or from lack of information, the notice here give resulted in prejudice, and we have found none. Hartzell urges that in a proceeding under 28 U.S.C. § 1826 the court should comply with the notice and hearing provisions of Rule 42(b), Fed.R.Crim.P. Those circuits which

have considered the question have concluded that despite the "civil" nature of a § 1826 proceeding *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), and despite the "summarily" language in that statute, Rule 42(b) does provide the appropriate standard for notice and hearing. The leading case is *United States v. Alter,* 482 F.2d 1016 (9th Cir. 1973). *See also In re Grand Jury,* 524 F.2d 209, 218–19 (10th Cir. 1975); *In re Sadin,* 509 F.2d 1252, 1255–56 (2d Cir. 1975); *In re Lochiatto,* 497 F.2d 803, 807 & n.9 (1st Cir. 1974).

At the outset of the hearing on April 14 the district court stated fully the essential facts constituting the contempt charged. Rule 42(b) expressly permits such oral notice. Thus any deficiency in the district court procedure would lie in the length of time afforded for preparation of a defense. But the difficulty with Hartzell's objection to the length of time allowed in this case is that nowhere does he suggest that he had any defense to present which would have required more time than was afforded. Certainly there is merit to the position of those circuits holding that the procedural safeguards of Rule 42(b) should be followed in a § 1826 case. But if there was a technical departure from those safeguards in this instance, the error was harmless.

Hartzell's principal attack on the contempt order is addressed to the provision which suspends the running of his criminal sentence during his civil confinement. He urges that once service of a sentence has commenced, the running of that sentence cannot be tolled. The theory underpinning this argument is that at common law the running of a sentence could not have been interrupted to punish a contemnor, and that 18 U.S.C. § 3568 [1] codifies the common law

---

1. In relevant part, 18 U.S.C. § 3568 provides:
    The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts

for which sentence was imposed. As used in this section, the term "offense" means any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress.

rule. This argument has been rejected by the four courts of appeals which have considered it. *Martin v. United States,* 517 F.2d 906 (8th Cir. 1975); *Williamson v. Saxbe,* 513 F.2d 1309 (6th Cir. 1975) (per curiam); *United States v. Liddy,* 166 U.S. App.D.C. 95, 510 F.2d 669 (1974) (en banc), *cert. denied,* 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975); *Anglin v. Johnston,* 504 F.2d 1165 (7th Cir. 1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1353, 43 L.Ed.2d 440 (1975). Two Justices of the Supreme Court have expressed approval of these holdings. *United States v. Wilson,* 421 U.S. 309, 321 n.2, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975) (Blackmun & Rehnquist, JJ., concurring). Hartzell would have us adopt the view of the dissenters in *Martin v. United States, supra,* 517 F.2d at 910, and *United States v. Liddy, supra,* 510 F.2d at 667.

■ We conclude that not only the numerical but the analytical weight of authority lies with the sixteen federal appellate judges who have concluded that a civil confinement pursuant to § 1826 may interrupt a sentence. They reason that 18 U.S.C. § 3568 merely prescribes the method of calculating the commencement of a sentence, and that the coercion of § 1826 would be meaningless against prisoners if credit against the original sentence must be given for time spent in confinement for civil contempt. Certainly the law-and-order spirit which motivated Congress to enact § 1826 would be inconsistent with an intention that it provide a remedy useless against prisoners. The dissenters urge that the sanction of criminal contempt remains. But it remains for non prisoners as well. It seems highly unlikely that Congress intended prisoners to be in an exempt category.[2]

■■ Hartzell also urges that § 1826 is an unconstitutional bill of attainder, and a violation of the cruel and unusual punish-

ment clause of the eighth amendment. These contentions lack merit. He also urges that the thirty-day limitation for disposition of appeals in 28 U.S.C. § 1826(b) deprives him of appellate due process. Since in this case we granted adequate time for briefing and have found that the briefs were adequate, we reject that contention also.

The judgment of the district court will be affirmed.

ALDISERT, Circuit Judge (concurring and dissenting).

I join in the court's opinion except to the extent that it affirms that portion of the district court's order that suspends the running of Hartzell's criminal sentence during his civil confinement. I would hold that in the civil proceedings at D.C. Misc. No. 76–99 on April 14, 1976 Judge Clifford Scott Green lacked jurisdiction to alter a sentence he had pronounced on April 29, 1975 in the criminal proceedings at D.C. No. 74–363.

### I.

My beginning point is the basic precept succinctly articulated by Justice Hughes in *United States v. Mayer,* 235 U.S. 55, 67, 35 S.Ct. 16, 19, 59 L.Ed. 129 (1914): "In the absence of statute providing otherwise, the general principle obtains that a court cannot set aside or alter its final judgment after the expiration of the term at which it was entered . . .." (Citing cases.) Rule 35, F.R.Crim.P. has since been adopted, and now controls the period during which a court may correct or reduce a sentence:

> The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the

---

No sentence shall prescribe any other method of computing the term.

**2.** We are not troubled by the dissent's argument that the district court lacks jurisdiction to interrupt the running of Hartzell's Danbury sentence. Preliminarily, we note that in this case it is purely fortuitous that the sentencing court and the contempt court are the same. In

the large majority of cases, then, the dissent's Rule 35 discussion will be inapposite.

More to the point, however, is our belief that whatever jurisdictional limitations originally existed on a contempt court's power to toll the running of a criminal sentence pending service of a civil contempt sentence, such limitation did not survive the enactment of § 1826.

reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law. As amended Feb. 28, 1966, eff. July 1, 1966.

The original necessity for the time provisions of the rule arose from the practice of holding terms of court:

> The limitation on the time for reduction of sentence is designed to extend the power of the judge to reduce a sentence imposed after a trial held near the end of a term, and on the other hand to put a limit on the reduction of sentence in a protracted or specially extended term of court or in the absence of fixed terms of court.

Federal Rules of Criminal Procedure, Preliminary Draft 135 (1943) (concerning Rule 31(b), predecessor of Rule 35).[1] By 1963 the formal terms of court were abolished, 28 U.S.C. §§ 138–41, thus eliminating any residual importance that practice might have retained.[2] The time provisions of Rule 35, however, continue to embody in some respects the jurisdictional limitations that formerly inhered in the term of court practice.

## II.

Although Rule 35 does not speak to an *increase* of sentence, *United States v. Benz,* 282 U.S. 304, 306–07, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931), addresses the issue precisely:

> The general rule is that judgments, decrees and orders are within the control of the court during the term at which they were made. They are then deemed to be "in the breast of the court" making them, and subject to be amended, modified, or vacated by that court. *Goddard v. Ordway,* 101 U.S. 745, 752 [25 L.Ed. 1040]. The rule is not confined to civil cases, but applies in criminal cases as well, provided the punishment be not augmented. *In re Lange,* 18 Wall. 163, 167–174 [21 L.Ed. 872]; *Basset v. United States,* 9 Wall. 38 [19 L.Ed. 548]. In the present case the power of the court was exercised to mitigate the punishment, not to increase it, and is thus brought within the limitation. Wharton, in Criminal Pl. and Pr. (9th Ed.) § 913, says: "As a general practice, the sentence, when imposed by a court of record, is within the power of the court during the session in which it is entered, and may be amended at any time during such session, provided a punishment already partly suffered be not increased."

The distinction that the court during the same term may amend a sentence so as to mitigate the punishment, but not so as to increase it, is not based upon the ground that the court has lost control of the judgment in the latter case, but upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution, which provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This is the basis of the decision in *Ex parte Lange, supra.*

Respecting the precept that a court should avoid meeting a constitutional question if the issues can be otherwise resolved, I do not reach the double jeopardy problem inherent in the interruption of one sentence

---

1. "[Rule 35] was a codification of existing law and was intended to remove any doubt created by the decision in *United States v. Mayer,* 235 U.S. 55, 67 [35 S.Ct. 16, 18, 59 L.Ed. 129], as to the jurisdiction of a District Court to correct an illegal sentence after the expiration of the term at which it was entered." *Heflin v. United States,* 358 U.S. 415, 422, 79 S.Ct. 451, 455, 3 L.Ed.2d 407 (1959).

2. See, *e. g.,* former Rule 45(c), F.R.Crim.P. (time limitations in the rules are not affected by the expiration of terms of court).

by the interposition of another.[3] Indeed, in the proceedings before us, I do not advance beyond a threshold inquiry into the jurisdiction of a court to alter any legal sentence following the 120-day period of Rule 35.

This court has held that the 120-day time limitation of Rule 35 is jurisdictional. *United States v. Robinson,* 457 F.2d 1319 (1972).[4] If a district court lacks jurisdiction to entertain a *defendant's* motion to reduce a sentence after the 120-day period, it cannot with reason be said to possess jurisdiction to entertain the *government's* motion to alter service of that sentence in any way.

Cases relied upon to support the government's position did not present the precise jurisdictional infirmity that inheres in this case.[5] None of the cases squarely decided the question of the court's jurisdiction to alter a sentence beyond the time limits of Rule 35. Nor was the issue discussed by the concurring justices in *United States v. Wilson,* 421 U.S. 309, 321 n.2, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975). Accordingly, I cannot agree that the "analytical weight of authority lies with the sixteen federal appellate judges"—who did not address the issue. On the contrary, no precedential authority has been cited suggesting that any court has jurisdiction beyond the 120-day period to interfere with the operation of a legal sentence.

### III.

So that the important issue at stake here be not bogged down by semantic exercises as to what is a formal "reduction" or "increase" of the original sentence, I emphasize instead those specific constraints that have been imposed on sentencing courts by the Supreme Court. Assuming a legal final judgment of sentence, any action by the sentencing court "after the expiration" of the stated permissible time that will "alter its final judgment", *United States v. Mayer, supra,* or subject the final judgment "to be amended, modified, or vacated" is flatly prohibited. *United States v. Benz, supra.* Clearly, the interposition of the civil contempt sentence constitutes an interruption of the original sentence. Also clearly, had the interruption worked a "reduction" of the sentence, it would have been proscribed *in ipsis verbis* by Rule 35. *United States v. Robinson, supra.* We then must come to the heart of the matter—whether sandwiching an additional period of incarceration in the midst of another sentence has the effect of altering, amending, or modifying the sentence being served. I think it does. In my view, the original sentence has not only been altered, it has been altered in a way unfavorable to the prisoner.

When appellant began serving his five-year sentence of April 29, 1975, he had a

3. *Piemonte v. United States,* 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961), and *Reina v. United States,* 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960), implicated criminal contempt sentences and did not address the double jeopardy issue.

4. Accord, *United States v. Flores,* 507 F.2d 229 (5th Cir. 1975); *United States v. Regan,* 503 F.2d 234 (8th Cir. 1974), *cert. denied,* 420 U.S. 1006, 95 S.Ct. 1449, 43 L.Ed.2d 764 (1975); *United States v. Mehrtens,* 494 F.2d 1172 (5th Cir.), *cert. denied,* 419 U.S. 900, 95 S.Ct. 182, 42 L.Ed.2d 145 (1974); *United States v. Ellenbogen,* 390 F.2d 537 (2d Cir.), *cert. denied,* 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968). "If the motion is untimely under the rule and the sentence is a lawful one the court is powerless to act." 2 Wright, Federal Practice and Procedure § 587, at 572 (1969). Accord, 8A Moore, Federal Practice ¶ 35.02[2] (1975).

5. In *Martin v. United States,* 517 F.2d 906 (8th Cir.), *cert. denied,* 423 U.S. 856, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975), Martin was convicted on January 3, 1973 and sentenced prior to February 20, 1973 when he was incarcerated for civil contempt. In *Anglin v. Johnston,* 504 F.2d 1165 (7th Cir. 1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1353, 43 L.Ed.2d 440 (1975), although Anglin was originally sentenced February 23, 1972, he did not begin to serve the sentence until March 27, 1973, following modification of his sentence on March 19, 1973. The civil contempt commitment was ordered on June 20, 1973. The per curiam opinion in *Williamson v. Saxbe,* 513 F.2d 1309 (7th Cir. 1974), though not setting forth the date of the original criminal sentence, relies on *Anglin v. Johnston,* the facts of Anglin being "squarely on point." 513 F.2d at 1310. In *United States v. Liddy,* 166 U.S.App.D.C. 95, 510 F.2d 669 (1974) *(in banc), cert. denied,* 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975), the criminal sentence was imposed on March 23, 1973 and the civil contempt commitment ordered on April 3, 1973.

reasonable expectation of parole after serving one-third of that period. 18 U.S.C. § 4202. Moreover, because his sentence was imposed under 18 U.S.C. § 4208(a)(2) he had a possibility of parole at an earlier date as determined by the parole board.

The time of release from incarceration to parole was deemed so significant in *Berry v. United States,* 412 F.2d 189, 192 (3d Cir. 1969), that we held failure to inform a defendant of non-eligibility for parole constituted failure to explain the consequences of a plea:

> In any normal sentencing procedure in the federal courts, a sentence prescribing a number of years of imprisonment generally means that the defendant may expect to serve approximately one-third of this term with good conduct. Probation and parole are concepts which our society has come to accept as natural incidents of rehabilitation during imprisonment.
>
> . . . [Loss of probation and parole] becomes an inseparable ingredient of the punishment imposed. Its effect is so powerful that it translates the term imposed by the sentencing judge into a mandate of actual imprisonment for a period of time three times as long as that ordinarily expected.
>
> The mandate of Rule 11, . . . is designed to insure that the pleader is made aware of the outer limits of punishment. At the very least, this means that he must be apprised of the period of required incarceration. Except for capital punishment, no other consequence can be as significant to an accused as the period of possible confinement. When one enters a plea of guilty he should be told what is the worst to expect. At the plea he is entitled to no less—at sentence he should expect no more.

Further, speaking through Judge Garth, we have held that a sentence of 10 years with parole governed by 18 U.S.C. § 4202 was more severe than a sentence of 10 years with parole governed by § 4208(a)(2). "We interpret [*North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)] as prohibiting the trial court from increasing the severity of either the custodial portion of a sentence or the special parole term following appeal . . .." *United States v. Hawthorne,* 532 F.2d 318, 324 n.9 (3d Cir. 1976).

Eligibility for parole is measured in part by actual time served and in part by the inmate's good conduct during imprisonment. Almost a half a century ago, the Department of Justice memorandum supporting the bill that became 18 U.S.C. § 3568, emphasized that "computations for deduction for good conduct shall be computed beginning with the day on which sentence commences to run." [6] Deduction for good conduct, of course, depends on conduct during the custodial period. A provision of the newly enacted Parole Commission and Reorganization Act (Public Law 94–233, 94th Cong., H.R. 5727, March 15, 1976), 18 U.S.C. § 4207 specifically provides for Parole Commission consideration of reports and recommendations from the staff of the facility in which the prisoner is confined. Without the opportunity to obtain deduction for good conduct from the original commencement of the sentence, and without the opportunity to be observed by the facility's staff during the custodial period, the inmate is deprived of significant ameliorative aspects of the sentence as originally pronounced. He is deprived of "an inseparable ingredient of the punishment imposed." *Berry v. United States, supra,* 412 F.2d at 192.

In the case at bar, Alexander Hartzell has been made to suffer these deprivations. Judge Green's action on April 14, 1976, in suspending the prior criminal sentence clearly had the effect of altering, amending or modifying that sentence. Hartzell's chance for an early release from actual confinement was directly and substantially affected by the interposition of the new civil contempt confinement.

---

6. S.Rep.No.803, 72d Cong., 1st Sess. 2 (1932). *See United States v. Liddy, supra,* 510 F.2d at 674.

Although technically speaking, the original sentence was not "increased", the same can be said of the second sentence in *Hawthorne*; nevertheless, we vacated it and remanded under the dictates of *North Carolina v. Pearce*. The *Berry* sentence was not facially defective, but we vacated it because rights to probation and parole were deemed "natural incidents of rehabilitation" and "an inseparable ingredient of the punishment imposed."

The majority's response to these views prompts this reply. First, in the view I take, it is immaterial what court tampers with the original sentence imposed. Where a court other than the one that originally sentenced purports to alter, amend, or modify the sentence, the lack of propriety assumes *a fortiori* proportions, if the alteration is made after the authorized period.

Second, there is nothing in the text of 28 U.S.C. § 1826 that suggests an intention to interfere with jurisdictional limitations. Indeed, the legislative history is to the contrary. House Report No. 91–1549 accompanying the Organized Crime Control Act of 1970, of which § 1826 was Title III, discloses:

> Title III is *intended to codify present civil contempt practice* with respect to recalcitrant witnesses in Federal grand jury and court proceedings. As amended by the committee, the title authorizes a maximum civil contempt commitment of 18 months, and also establishes a standard of discretionary bail during appeal of a civil contempt order which is consistent with the Federal Rules of Criminal Procedure.

1970 U.S.Code Cong. & Admin.News, pp. 4007, 4008 (emphasis added).

The section-by-section analysis of the bill advises "Section 1826(a) becomes applicable to any proceeding before or ancillary to any court or grand jury in which a witness unjustifiably refuses to testify or produce other information. . . . *The procedure is designed to codify present practice.* See *Giancana v. United States,* 352 F.2d 921 (7th Cir.), *cert. denied,* 382 U.S. 959, 86 S.Ct. 437, 15 L.Ed.2d 362 (1965)." (Emphasis added.) 1970 U.S.Code Cong. & Admin. News, pp. 4007, 4022.

It cannot be said that sandwiching a civil contempt sentence within a sentence then being served was "present practice" in 1970. Published accounts disclose no attempt by the Justice Department to resort to this gimmick until February 20, 1973, when it inaugurated the practice in *Martin v. United States, supra.* Thereafter it adopted the practice elsewhere. See note 5 *supra.*

Moreover, in my view, to accept the majority's interpretation of § 1826 would implicate the extremely serious double jeopardy considerations set forth in *United States v. Benz, supra.*

Accordingly, without meeting statutory construction or constitutional questions posed by the cases and the statute on which the majority rely, I would hold there was no jurisdiction in the district court in 1976 to order a *de facto* alteration of the 1975 sentence. In other respects I would affirm the judgment.

Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

## SUR PETITION FOR REHEARING

PER CURIAM.

■ Alexander Hartzell has petitioned for rehearing in this case. The petition having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. The failure of a petition to achieve the necessary votes for rehearing does not, notwithstanding any intimation to the contrary in Judge Aldisert's dissenting opinion, imply any judgment on the merits and has no jurisprudential significance.

## OPINION SUR DENIAL OF PETITION FOR REHEARING

ALDISERT, Circuit Judge.

The full court having accepted the panel majority's conclusion that there was jurisdiction in the district court in 1976 to order a *de facto* alteration of the 1975 sentence, it now becomes necessary for me to state why I believe the full court should examine the statutory and constitutional hypotheses upon which the panel majority sustained the action of the district court.

To the extent that my brothers Gibbons and Garth rely on the construction given 18 U.S.C. § 3568 [1] in *United States v. Liddy*, 166 U.S.App.D.C. 289, 510 F.2d 669 (1974) (in banc), they rest on shaky premises. Liddy contended that § 3568 did not permit tampering with a valid sentence. He argued that the statute "establishes a strict method of sentence calculation that cannot be varied without some specific statutory authority," *ibid.* at 673, and that there could be no interruptions that would delay his serving the sentence imposed on him.[2] The *Liddy* court's answer to this important contention was not responsive: "[W]hen Congress enacted section 3568, it was primarily concerned with the commencement date of a sentence, not with its subsequent calculation and termination date." 510 F.2d at 674.

Obviously, the legislature was not interested in the commencement date *in vacuo*. In § 3568, Congress specifically set forth the date a sentence begins to run with an awareness of the importance of that date, particularly with regard to deduction for good conduct:

> [C]omputations for deduction for good conduct shall be computed beginning with the day on which sentence commences to run. These provisions [of § 3568] are very necessary to remove confusion under existing practices. There is often uncertainty as to when a sentence does commence to run and as to the date from which computation of good conduct deductions shall be computed.

S.Rep. No. 803, 72d Cong., 1st Sess. 2 (1932); *see* 510 F.2d at 674. The legislative interest in the *commencement* date had the deliberate purpose of fixing that date so that the *release* date, including deduction for good conduct, could be calculated with some degree of certainty and uniformity. "Read more broadly [§ 3568] is a manifestation of a legislative purpose that individuals sentenced to imprisonment shall not be denied the opportunity to commence service of their terms by administrative delay or preliminary confinement." 510 F.2d at 681 (MacKinnon, J., dissenting).

To the extent that the *Liddy* court concluded that Congress was not primarily concerned with sentence termination, it was guilty of a classic *non sequitur*, "acceptance of a conclusion which does not follow logically from given premises or from any antecedent statements."[3] To the extent that the *Liddy* court concluded that Congress was not primarily concerned with sentence calculation, the court was simply wrong.

---

1. *§ 3568. Effective date of sentence; credit for time in custody prior to the imposition of sentence*

    The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. As used in this section, the term "offense" means any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress.

    If any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

    No sentence shall prescribe any other method of computing the term.

2. Except, of course, for interruptions due to escape, parole violations, etc. *See* 510 F.2d at 674.

3. Sahakian & Sahakian, *Material Fallacies of Reasoning*, excerpted in R. Aldisert, The Judicial Process 641 (1976).

The statute itself says that "[n]o sentence shall prescribe any other method of computing the term."

*Anglin v. Johnston*, 504 F.2d 1165 (7th Cir. 1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1353, 43 L.Ed.2d 440 (1975), a second case relied on by the majority, does not meet the critical issue of interfering with the prisoner's right to a timely release with appropriate deduction for good conduct. Aside from quoting the statute, the *Anglin* court's entire discussion of it was this:

> The language of section 3568 is unambiguous. Credit shall be given for time spent "in connection with the offense or acts for which sentence was imposed" and "offense" is defined as a "criminal offense." The confinement for which petitioner seeks credit was imposed in connection with a civil contempt (refusal to testify) and not in connection with the criminal offense "for which sentence was imposed" (theft from interstate shipment and illegal use of firearms). Hence the language of section 3568 does not support petitioner. The parties have not directed us to any pertinent legislative history relative to either section 3568 or 28 U.S.C. § 1826(a) nor have we discovered any which would tend to solve the issue on appeal.

504 F.2d at 1167. *Martin v. United States*, 517 F.2d 906 (8th Cir.), *cert. denied*, 423 U.S. 856, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975), blindly followed *Liddy* and *Anglin* without perceiving the illicit reasoning and illegitimate conclusion. *Williamson v. Saxbe*, 513 F.2d 1309 (7th Cir. 1974), the final case relied on by the majority, also followed *Anglin* without reasoned analysis of the serious issue involved.[4]

I find Judge MacKinnon's dissenting opinion in *Liddy*, 410 F.2d at 677–88, and Judge Heaney's dissenting opinion in *Martin*, 517 F.2d at 910–16, well reasoned and

persuasive. Accordingly, I would have in banc consideration of the statutory question whether sandwiching an additional period of incarceration in the midst of a sentence being served violates 18 U.S.C. § 3568 as interfering with the computation of the sentence and affecting the right to deduction for good conduct from the commencement of the sentence.

Should the court in banc find no statutory violation, it then properly could consider two important constitutional issues which lurk in this proceeding. First, does the sandwiching of the additional period of incarceration—with consequent effects on early release—violate the Fifth Amendment's double jeopardy prohibition? *See United States v. Benz*, 282 U.S. 304, 306–07, 51 S.Ct. 113, 75 L.Ed. 354 (1931). This is an important issue that has not been thoroughly considered in any of the opinions. Second, does the thirty-day limitation for disposition of appeals in 28 U.S.C. § 1826(b)[5] deprive a defendant of due process of law? I now have second thoughts about my previous agreement with the majority on this point. It is no answer that *courts* traditionally cannot adhere to this unreasonable and unworkable deadline. Thus, though this appeal was filed on April 15, it was submitted on May 4, and not decided until June 22—68 days after filing. Nevertheless, *appellant* had counsel appointed under the Criminal Justice Act as of April 20 (he appeared *pro se* in the trial court) and was necessarily required to file his brief by April 30, two weeks after filing the appeal and ten days after the appointment of counsel. It is one thing to conclude, as the panel did, that the briefs in this case were adequate. It is quite another to conclude that a procedure which requires the briefing of novel and complex issues within such a short period passes due proc-

---

**4.** For a chronology of the civil contempt adjudications in *Martin, Anglin, Williamson* and *Liddy*, see note 5 of the panel dissenting opinion, ante, p. 171.

**5.** (b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken

by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

ess muster. I would have the full court meet this issue too.

Accordingly, I dissent from the order denying rehearing in banc.