## In re GRAND JURY INVESTIGATION.

### Appeal of David ORESKI.

### No. 88–3280.

United States Court of Appeals, Third Circuit.

Argued Sept. 27, 1988.

Decided Jan. 10, 1989.

Rehearing and Rehearing In Banc Denied Feb. 9, 1989.

Joel B. Johnston (argued), Asst. Federal Public Defender, Pittsburgh, Pa., for appellant David Oreski.

Constance M. Bowden (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee U.S.

Before GIBBONS, Chief Judge, SEITZ, Circuit Judge, and POLLAK, District Judge *.

### OPINION OF THE COURT

LOUIS H. POLLAK, District Judge.

This is an appeal from an order of the United States District Court for the Western District of Pennsylvania judging David Paul Oreski in civil contempt of court pursuant to 28 U.S.C. § 1826. Appellant challenges only the portion of the district court's order directing that the service of his ongoing state sentence be tolled during his confinement for federal civil contempt.

* Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Because we agree that 28 U.S.C. § 1826 authorizes a federal district court to interrupt service of a state sentence, we will affirm the district court's order.

The basic facts regarding the order of contempt are not in dispute. In August 1986, while serving a term of incarceration in Western Penitentiary–State Correctional Institution at Pittsburgh, Oreski was brought, pursuant to a writ of habeas corpus ad testificandum, before a federal grand jury sitting in the Western District of Pennsylvania. Oreski invoked his Fifth Amendment right against self-incrimination and refused to answer questions put to him. Subsequently, the district court granted Oreski immunity pursuant to 18 U.S.C. §§ 6002–03 and directed that he be returned to the grand jury to give testimony. Upon Oreski's continuing refusal to testify, the district court held a hearing and, on September 30, 1986, ordered Oreski confined for civil contempt pursuant to 28 U.S.C. § 1826. The Judgment and Commitment for Contempt provides that:

> [T]his confinement for Contempt of Court shall stay the service of sentence imposed at CC Nos. 8104743 and 8003911A, in the Court of Common Pleas of Allegheny County Criminal Division, which sentence shall not continue to run or be considered concurrent herewith.

In March 1988, Oreski filed a motion to modify the Contempt Judgment to "reflect no interruption of a state sentence and further ordering that the Commonwealth of Pennsylvania credit Mr. Oreski for the time served in custody pursuant to the civil contempt adjudication." Appellant App. at 8. While this motion was pending, Oreski completed the maximum civil contempt sentence of eighteen months in confinement on March 30, 1988, and the district court terminated the Contempt Judgment. On April 20, 1988, the district court denied Oreski's motion to modify the Contempt Judgment. It is this action that is the subject of the current appeal.[1]

■ Oreski's central contention on appeal is that principles of federalism preclude a construction of 28 U.S.C. § 1826 that would authorize tolling a state sentence.[2] The contention is not that Congress lacks power to provide for tolling;

---

1. The present appeal does not address the underlying merits of the Contempt Judgment. In August 1987, Oreski, acting *pro se,* requested to be released from the Contempt Judgment; the district court treated his petition as a motion pursuant to Federal Rule of Criminal Procedure 35 and denied the petition. In November 1987, Oreski moved for release on the grounds that the Contempt Judgment had lost its coercive effect. The district court also denied this motion, and this court affirmed the denial by judgment order. *In Re Grand Jury Investigation,* 838 F.2d 1206 (3d Cir.1988).

2. The government contends that appellant lacks standing to challenge the district court's authority to stay the service of his state sentence, because appellant bases his argument on comity considerations. In support of this contention, the government cites a long line of cases rejecting a prisoner's standing to contest the sequence in which he is tried or punished where he has been charged with or convicted of both federal and state offenses. *See, e.g., Ponzi v. Fessenden,* 258 U.S. 254, 260, 42 S.Ct. 309, 310, 66 L.Ed. 607 (1922) (noting that a prisoner "may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it").

This argument is inapposite in the present case. Appellant does not allege that he has standing to challenge a federal intrusion on Pennsylvania's sovereignty. Rather, he invokes comity only as a principle to guide this court's interpretation of a federal statute, that is, to resolve as a threshold matter whether Congress has *authorized* federal courts to toll state sentences. Clearly, appellant has standing to challenge the district court's authority to impose a sanction pursuant to a federal statute on the ground that the statute does not authorize the sanction imposed. *See, e.g., Sullivan v. United States,* 485 F.2d 1352 (5th Cir.1973) (reversing imposition of sentence not authorized by federal bank robbery statute). Such a circumstance is not one in which the question raised " 'is of interest only to the sovereigns involved.' " *Bowman v. Wilson,* 672 F.2d 1145, 1154 (3d Cir. 1982) (quoting *United States ex rel. Brewer v. Maroney,* 315 F.2d 687, 688 (3d Cir.1963)). It is one in which the petitioner has alleged a concrete injury and " ' "such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.' " *Id.* at 1150 (quoting *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975) (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962))).

the contention is simply that Congress has not so provided in section 1826.

## I.

■ A federal court's inherent power to confine a recalcitrant witness for civil contempt was codified in 1970 with the enactment of the Organized Crime Control Act, Pub.L. No. 91–452, Title III, § 301(a), 84 Stat. 932 (1970). The codification at 28 U.S.C. § 1826 provides in pertinent part:

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

Thus, section 1826(a) does not by its terms permit or prohibit the interruption of a contemnor's preexisting sentence. Nor does the legislative history of section 1826 specify what remedial powers are available to a court in the event of civil contempt by a prisoner.

Soon after the enactment of section 1826, a number of federal district courts ruled that section 1826 authorized the tolling of a contemnor's federal sentence during confinement for civil contempt. Prisoners whose federal sentences had been tolled argued on appeal that federal courts lacked authority to interrupt a preexisting sentence. *See, e.g., United States v. Liddy,*

510 F.2d 669, 673–76 (D.C.Cir.1974) (en banc), *cert. denied,* 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975). Courts of appeals uniformly rejected this argument, holding that section 1826 provides sufficient authority to toll a federal sentence. *See, e.g., Anglin v. Johnston,* 504 F.2d 1165, 1169 (7th Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1353, 43 L.Ed.2d 440 (1975). As this court put the matter in *In re Grand Jury Investigation,* 542 F.2d 166, 169 n. 2 (3d Cir.1976), *cert. denied,* 429 U.S. 1047, 97 S.Ct. 755, 50 L.Ed.2d 762 (1977), "whatever jurisdictional limitations originally existed on a contempt court's power to toll the running of a criminal sentence pending service of a civil contempt sentence, such limitation did not survive the enactment of § 1826."

In 1978, the question presented on this appeal—whether a federal district court has authority to toll the *state* prison sentence of a federal civil contemnor—arose in a reported case for the first time. The case, *In Re Liberatore,* 574 F.2d 78 (2d Cir.1978), was a decision of the Second Circuit. That court had not, as of that time, had occasion to address the question whether a federal district court has authority to toll a federal sentence. In *Liberatore,* the Second Circuit, without endorsing or disavowing the cases in which other courts of appeals had affirmed district court authority to toll federal sentences, determined that those cases did not support a cognate authority to toll state sentences. In the Second Circuit's view, federal tolling of state sentences would be a departure from "time-honored precedent barring a federal court from engaging in such an intrusion upon the legitimate jurisdiction of the courts of a different sovereignty." *Id.* at 87.[3]

A year after *Liberatore,* the Second Circuit concluded that section 1826 does authorize tolling of federal sentences. *United States v. Dien,* 598 F.2d 743 (2d Cir.1979). The authority of a federal court to toll the federal sentence of a civil contemnor is

---

**3.** There appears to be only one reported case in which a court has considered the *Liberatore* position; that court followed *Liberatore,* albeit

without discussion. *In re Andrews,* 469 F.Supp. 171, 172 n. 1 (E.D.Mich.1979).

now well settled, having been affirmed by all nine of the courts of appeals that have addressed the issue.[4]

## II

Faced with a recalcitrant state prisoner, the district court in the present case declined to adopt the reasoning of *Liberatore* and instead held that section 1826 does authorize interruption of a preexisting state sentence. The district court reasoned that such authority logically flows from the purpose of the statute: to empower federal courts to coerce reluctant witnesses to cooperate. Refusing to permit the interruption of a preexisting state sentence would, so the court concluded, render nugatory the coercive impact of an order of civil contempt.

The district court's position is firmly rooted in the numerous decisions upholding interruption of federal sentences. As this court observed in *Grand Jury Investigation*, "section 1826 would be meaningless against prisoners if credit against the origi-

nal sentence must be given for time spent in confinement for civil contempt." 542 F.2d at 169.

We agree with the district court that our reasoning in cases involving federal sentences is equally applicable to the case at bar. Permitting federal courts to interrupt state sentences is as essential to the fundamental coercive purpose of section 1826 as is the practice of tolling federal sentences. To conclude otherwise would create an entire subclass of witnesses—state prisoners—against whom section 1826 would have no coercive effect. This court has already found it "highly unlikely that Congress intended prisoners to be in an exempt category" free—as non-prisoners are not—from the coercive impact of a civil contempt sanction. *Grand Jury Investigation*, 542 F.2d at 169. It seems to us equally unlikely that Congress intended to bring all persons other than state prisoners within the reach of section 1826, leaving state prisoners in "an exempt category." [5]

---

**4.** *United States v. Liddy*, 510 F.2d 669 (D.C.Cir. 1974) (en banc), *cert. denied*, 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975); *United States v. Dien*, 598 F.2d 743 (2d Cir.1979); *In re Grand Jury Investigation*, 542 F.2d 166 (3d Cir.1976), *cert. denied*, 429 U.S. 1047, 97 S.Ct. 755, 50 L.Ed.2d 762 (1977); *United States v. Chacon*, 663 F.2d 494 (4th Cir.1981); *In re Grand Jury Proceedings*, 532 F.2d 410 (5th Cir.), *cert. denied*, 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976); *Williamson v. Saxbe*, 513 F.2d 1309 (6th Cir.1975); *Anglin v. Johnston*, 504 F.2d 1165 (7th Cir.1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1353, 43 L.Ed.2d 440 (1975); *Martin v. United States*, 517 F.2d 906 (8th Cir.), *cert. denied*, 423 U.S. 856, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975); *In re Garmon*, 572 F.2d 1373 (9th Cir.1978).

In addition, the legislative history of a recent amendment of section 1826 shows congressional awareness and acceptance of the practice of tolling federal sentences during civil contempt confinement. Subsection (c) of § 1826, added in 1984, provides:

Whoever escapes or attempts to escape from the custody of any facility ... in which or to which he is confined pursuant to this section ... shall be subject to imprisonment.

The amendment was designed to close a loophole in the general federal escape statute, 18 U.S.C. § 751 (1988), which establishes criminal liability for persons who escape from custody that is imposed "by virtue of an arrest ... or conviction." Because contempt confinement is not imposed pursuant to "arrest" or "conviction," persons who escaped from contempt con-

finement could not be prosecuted prior to the passage of § 1826(c).

In its Report discussing the amendment, the Senate Committee on the Judiciary noted that "if a [federal] prisoner refuses to testify and is ordered civilly committed the criminal sentence is suspended for the duration of the civil commitment to ensure that the civil commitment extends the period of confinement pursuant to the criminal sentence." S.Rep. No. 225, 98th Cong., 2nd Sess. 330, *reprinted in* 1984 U.S.Code Cong. & Admin.News, 3182, 3505 (citing 28 C.F.R. 522.11(d)). The administrative regulation cited by the Committee, 28 C.F.R. 522.11(d) (1979), states that when a federal prisoner is confined under section 1826, his "criminal sentence is suspended for the duration of the civil contempt sentence."

**5.** Appellant's argument that the availability of a criminal contempt sanction lessens the need for a civil contempt remedy under § 1826 is similarly foreclosed. The courts of appeals have rejected, in cases involving tolling of federal sentences, the position that criminal contempt is an adequate substitute for civil contempt. *See, e.g., Martin v. United States*, 517 F.2d 906, 909 n. 7 (" 'The confinement is civil, not criminal; its purpose is to secure the testimony through a sanction, not to punish the witness by imprisonment.' ") (quoting H.R.Rep. No. 1549, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S. Code Cong. & Admin.News, 4007, 4022), *cert. denied*, 423 U.S. 856, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975).

Appellant Oreski contends, nonetheless, that principles of federalism preclude reading section 1826 as authority for the tolling of state sentences. Appellant's argument relies on the federalism discussion in *Liberatore*. *Liberatore* emphasized the "practical necessity" of ensuring, in a system of dual sovereignties, that the valid final judgments rendered by one sovereignty are honored by the other. 574 F.2d at 88. Implicit in this position is the view that states retain a significant interest in having their sentences uninterrupted by a prisoner's subsequent confinement for federal civil contempt. Although we agree with the principle animating *Liberatore* that courts should construe federal statutes to avoid unwarranted intrusion upon states' interests, we disagree with *Liberatore*'s assessment of the level of intrusion caused by federal tolling of state sentences.

We are not unmindful of the danger of federal legislation intruding on state concerns. When Congress has not explicitly authorized an expansion of federal power into an area that is of paramount state concern, courts should refrain from interpreting the legislation in a way that alters the federal-state balance. Thus, in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987), the Supreme Court refused to construe the mail fraud statute as setting standards of disclosure and good government for local and state officials, absent clear congressional authority. Similarly, in *United States v. Bass*, 404 U.S. 336, 349–51, 92 S.Ct. 515, 523–24, 30 L.Ed.2d 488 (1971), the Court refused to interpret a federal gun control statute as authorizing federal intrusion upon state criminal jurisdiction because Congress had not expressed this purpose clearly.

*McNally* and *Bass* differ from the present case in that they involved expansions of federal power into areas of unquestioned importance to states. Federal legislation that criminalizes conduct of state officials reaches into the realm of state self-government. Likewise, federal handgun regulations that render "traditionally local criminal conduct a matter for federal enforcement" bring the federal government into an area of significant state concern. *Bass*, 404 U.S. at 350, 92 S.Ct. at 523.[6]

In contrast, the interpretation of the federal civil contempt statute adopted by the district court in the present case does not, as in *McNally* and *Bass*, expand the *scope* of the statute's prohibitions. Section 1826 governs *all* witnesses who refuse to comply with a federal court order to testify. Whatever interpretation we adopt regarding the sanctions authorized by the statute, the reach of the statute remains the same: a state prisoner's refusal to testify is as punishable as anyone else's.

Thus, the asserted state interest, if any, arises not from the conduct regulated but from the method of imposing the sanction—tolling of the appellant's state sentence. We find no basis, however, for viewing the tolling of state sentences by federal courts as intruding on an important state interest. Viewed in its most practical light, tolling of a state sentence simply delays, in no case by more than eighteen months, the execution of a state sentence. It neither adds to, nor subtracts from, state power to enforce state criminal laws. Nor need it place an additional financial burden on state institutions, because federal regulations provide that federal prisons are to make their "facilities and resources available" for the implementation of commitments for civil contempt. 28 C.F.R. 522.10 (1988).

---

In any case, a court no longer has the power, on its own motion, to incarcerate a witness under criminal contempt and then to reduce the sentence in exchange for the witness' subsequent compliance. Under the new Sentencing Act applicable to offenses committed after November 1, 1987, only the government may move to reduce a criminal sentence. Fed.R.Crim. Proc. 35(b).

**6.** In both of these cases there is no doubt that Congress could have expanded the reach of federal law in the way contemplated by broad interpretation of the statutes. Nonetheless, given the strength of the states' interests in *McNally* and *Bass*, federalism counseled against expansive judicial interpretation in the absence of clear congressional authorization.

If there is an identifiable state interest in protecting state sentences from federal interruption, it is a purely formal one. To protect such an interest through the mechanical application of principles of federalism would be to disserve the "practical necessity" on which those principles rest.

In sum, we believe that section 1826 is most reasonably construed as authorizing a federal court to interrupt the running of a preexisting sentence during a prisoner's confinement for civil contempt. Our view is not altered because a state rather than a federal sentence is involved. In the absence of an identifiable state interest, principles of federalism do not require us to adopt a restrictive interpretation of section 1826 inconsistent with its purpose.

For these reasons, we will affirm the order of the district court.

SEITZ, Circuit Judge, dissenting.

I differ from my colleagues because I believe they have construed 28 U.S.C. § 1826 (contempt power) to authorize a significant federal encroachment on an area of state interest without a clear expression of such congressional intention.

There is no question raised on this appeal as to the authority of a district court, under its contempt power, to do as the district court did here: commit a disobedient witness—even one serving a state sentence—to federal custody for the time permitted by federal law. The problem arises here because, in the contempt order, the district court "Further Ordered that this confinement for Contempt of Court shall stay the service of sentence imposed * * * in the Court of Common Pleas of Allegheny County Criminal Division, which sentence shall not continue to run or be concurrent herewith." More concretely understood, the quoted provision of the order was a direction to the state authorities, although not named parties to the proceedings,[1] to suspend for a stipulated period the further

implementation of a lawfully imposed state sentence.

The majority interprets section 1826 to authorize the quoted provision of the order.[2] It concedes that no explicit language in 28 U.S.C. § 1826(a) or in the congressional history supports its position. It argues, however, that the coercive effect of the statutory contempt scheme will be frustrated as to state prisoners unless such authority is determined to be implicit in the statute. It avoids such frustration by concluding that the federal intrusion here is not significant. Because of its conclusion it is able to avoid the rule of interpretation found in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987), and *United States v. Bass*, 404 U.S. 336, 349–50, 92 S.Ct. 515, 523–24, 30 L.Ed.2d 488 (1971) that where there is significant federal interference with lawful state functions, the congressional intention to do so must appear in clear and definite language.

I do not agree that the federal intrusion countenanced by the majority is insignificant. One need only mention some of the important state interests in the administration of its criminal law that may well be affected. Certainly the application of a state's parole and "good time" statutes could be altered. Additionally, at least where there is a change of physical custody, an interruption may interfere with ongoing rehabilitation programs administered by the state. Other interests may come to mind.

I have identified substantial state interests not to imply that their existence precludes Congress from adopting legislation clearly designed to subordinate such interests where, as here, it furthers the objectives of the federal court system. Rather, where important state interests are possibly compromised, application of the clear and definite language test affords reasonable assurance that such state concerns have been weighed by Congress. *See Bass*, 404 U.S. at 349, 92 S.Ct. at 523.

---

1. I need not address the propriety of the district court's order because there has been no formal state participation in this case.

2. I do not quarrel with the majority's determination that appellant had standing to attack the quoted portion of the order.

I find the intrusion on state power[3] to be sufficiently substantial to require that section 1826 be interpreted under the rule of construction demanding a clear and definite statement of congressional purpose. The basic thrust of *In Re Liberatore*, 574 F.2d 78 (2d Cir.1978), lends support to my conclusion. I would, therefore, reverse so much of the district court's order as directed the "state" to suspend the running of appellant's state term of imprisonment.

---

**3.** I recognize that many courts, including our own, *In re Grand Jury Investigation*, 542 F.2d 166 (3d Cir.1976), *cert. denied*, 429 U.S. 1047, 97 S.Ct. 755, 50 L.Ed.2d 762 (1977), have interpreted section 1826 to authorize sentence tolling where a federal prisoner is found in civil contempt of a federal court. Here we are dealing with a federal-state relationship with the sensitivity implicit therein. Consequently, I do not find cases permitting interference with pre-existing sentences of federal prisoners compelling here.