# United States Court of Appeals
## For the First Circuit

No. 10-2005

IN RE: GRAND JURY.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Boudin, Lipez and Howard,

Circuit Judges.

Robert L. Sheketoff for appellant.
Michael L. Tabak, Assistant United States Attorney, with whom
Carmen M. Ortiz, United States Attorney, was on brief for appellee.

March 23, 2011

**BOUDIN, <u>Circuit Judge</u>.** This appeal presents the question whether, in order to make the federal sanction effective, a federal district court can suspend the running of a prisoner's state sentence while the prisoner is temporarily confined for federal civil contempt. The appellant, whom we will call John Doe, has been serving a state prison sentence set to expire several years from now. Last year, he was brought before a federal grand jury by writ of habeas corpus ad testificandum, granted statutory use immunity, <u>see</u> 18 U.S.C. §§ 6002-6003 (2006), and ordered to testify.

Despite warnings and threatened contempt, Doe refused to testify and was eventually found in civil contempt and placed in the custody of the U.S. Marshals Service "until such time as [he] shall obey" the court's earlier orders to testify, the incarceration not to exceed eighteen months or the end of the grand jury, whichever occurs first. <u>See</u> 28 U.S.C. § 1826(a) (2006). Thereafter, at the government's request, the district court amended the contempt order to provide that the federal contempt confinement

> shall interrupt the service of the sentence imposed on [Doe] by the [state court], which sentence shall not continue to run during the period that [Doe] is being held in civil contempt confinement, and the sentence imposed on [Doe] by the [state court] shall not be considered concurrent herewith; rather, that sentence imposed on [Doe] by the [state court] shall resume when, and only when, this civil contempt confinement of [Doe] pursuant to 28 U.S.C. § 1826(a) has terminated.

Failing to win reconsideration, Doe now appeals, raising a single claim, namely, that the district court lacked authority under the recalcitrant witness statute, 28 U.S.C. § 1826, to order the state to toll the state court sentence while he serves time for federal civil contempt.  The Second Circuit agrees with Doe's position, In re Liberatore, 574 F.2d 78 (2d Cir. 1978); a divided Third Circuit supports the government's view, In re Grand Jury Investigation, 865 F.2d 578 (3d Cir.), cert. denied, 493 U.S. 905 (1989).

Section 1826 reads in relevant part:

Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify . . . the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of--

(1) the court proceeding, or

(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

Whether the district court has the authority it exercised presents a question of law that we consider de novo, N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 12 (1st Cir. 2009), but to describe it as a question of statutory

-3-

interpretation is perhaps misleading.  Nothing in section 1826's language directly addresses the question whether the federal court may suspend a state sentence during the period of contempt.  Nor does the legislative history suggest that Congress ever considered the question.

Congress often leaves unresolved details needed in the enforcement of federal statutes.  Often these are important ones, such as the statute of limitations applicable to section 1983 acts.  See Bd. of Regents v. Tomanio, 446 U.S. 478, 483 (1980).  The omission is sometimes deliberate, Congress being unable to agree on the solution, Friendly, The Gap in Lawmaking--Judges Who Can't and Legislators Who Won't, 63 Colum. L. Rev. 787, 801 (1963), and sometimes inadvertent, id. at 801-02.  It is mere fortuity that a prisoner held in civil contempt by a federal court happens to be serving a state sentence.

By chance, when Congress in 1984 amended section 1826 (an amendment not bearing on the present case), the Senate committee report took note of and effectively endorsed the practice of federal courts interrupting federal sentences during incarceration for civil contempt.  S. Rep. No. 98-225, at 330 (1983).  And this practice has been upheld by every circuit to consider the question.[1]  But Doe's argument in this case turns largely on the

---

[1]E.g., United States v. Chacon, 663 F.2d 494, 495 (4th Cir. 1981) (per curiam); United States v. Dien, 598 F.2d 743, 744-45 (2d Cir. 1979) (per curiam); In re Garmon, 572 F.2d 1373, 1376 (9th

fact that the interrupted sentence is that of the state, which is to a degree in our federal system a separate sovereign.

Absent explicit language from Congress, resort must be had to background principles. One of these is the desire to make the statute serve its central purpose. Passamaquoddy Tribe v. Maine, 75 F.3d 784, 788-89 (1st Cir. 1996). Here, Congress' explicit purpose in section 1826 was "to secure the [witness'] testimony through a sanction." H.R. Rep. No. 91-1549, at 46 (1970), reprinted in 1970 U.S.C.C.A.N. 4007, 4022. The contempt sanction would be much reduced in force if the federal confinement were offset by an effective reduction in a pre-existing sentence, Chacon, 663 F.2d at 495; Anglin, 504 F.2d at 1169, even if collateral disadvantages remain for the contemnor relating to good time credits and parole.

True, a federal judge could impose a criminal contempt sentence on Doe, ordering it to be served at the end of the state court sentence. See Liberatore, 574 F.2d at 86, 88 n.9. But the criminal contempt sanction aims to punish, while civil contempt is designed to coerce. H.R. Rep. No. 91-1549, at 46 (1970), reprinted

_____

Cir. 1978); Bruno v. Greenlee, 569 F.2d 775, 776-77 (3d Cir. 1978) (per curiam); In re Grand Jury Proceedings, 534 F.2d 41, 42 (5th Cir. 1976); Martin v. United States, 517 F.2d 906, 909 (8th Cir.), cert. denied, 423 U.S. 856 (1975); Williamson v. Saxbe, 513 F.2d 1309, 1310 (6th Cir. 1975) (per curiam); United States v. Liddy, 510 F.2d 669, 671 (D.C. Cir. 1974) (en banc), cert. denied, 420 U.S. 980 (1975); Anglin v. Johnston, 504 F.2d 1165, 1169 & n.4 (7th Cir. 1974), cert. denied, 420 U.S. 962 (1975).

-5-

<u>in</u> 1970 U.S.C.C.A.N. at 4022. Thus, the civil sanction allows the contemnor to end his confinement at any moment by complying. <u>United States</u> v. <u>Marquardo</u>, 149 F.3d 36, 39 (1st Cir. 1998).

Were this the whole story, the balance of interests would easily favor the government, but here we are concerned with a federal court interrupting a state rather than a federal sentence. True, to achieve federal ends, state power is sometimes constrained even without express statutory authorization; examples are dormant Commerce Clause doctrine, <u>e.g.</u>, <u>Am. Trucking Ass'ns, Inc.</u> v. <u>Mich. Pub. Serv. Comm'n</u>, 545 U.S. 429, 433 (2005), and various immunities of federal officers from state law, <u>e.g.</u>, <u>In re Neagle</u>, 135 U.S. 1, 75 (1890). Yet, not surprisingly, courts are hesitant to override state authority by implication.

Thus, the Supreme Court has adopted a requirement of plain statement where Congress "intends to alter the usual constitutional balance between the States and the Federal Government," <u>Raygor</u> v. <u>Regents of the Univ. of Minn.</u>, 534 U.S. 533, 543-44 (2002) (internal quotation marks omitted); <u>see also</u> <u>Gregory</u> v. <u>Ashcroft</u>, 501 U.S. 452, 461, 464 (1991); <u>United States</u> v. <u>Bass</u>, 404 U.S. 336, 349-50 (1971); but it has said that this applies only when Congress "intends to pre-empt the historic powers of the States" or passes legislation in "traditionally sensitive areas that affect the federal balance," <u>Raygor</u>, 534 U.S. at 543 (internal

-6-

quotation marks and alterations omitted).  The critical terms are elastic and the doctrine requires a substantial intrusion.[2]

Whatever generalizations are offered by the case law, the reality is that the strength of the respective interests, state and federal, vary from one situation to another. In the present context of federal contempt power, the federal interest will almost always be considerable; whether there is <u>any</u> practical threat to state interests is less apparent, <u>see</u> <u>In re Grand Jury Proceedings</u>, 865 F.2d at 582-83, since presumably the state has a comparable interest in not having its own sentence diluted in force by making it concurrent with a sentence for different misconduct occurring later.

Conceivably, in rare situations, the state interest might be greater--for example, state law might <u>forbid</u> the state from holding the federal contemnor longer than his original release date, a claim made and apparently accepted in <u>Liberatore</u>, <u>see</u> 578 F.2d at 89-90.  If that or some comparable consideration existed, it would be up to the contemnor to point it out to the district judge, who could consider what to make of it.  But here no such

---

[2]The canon has so far been applied by the Supreme Court to ambiguous statutes that would, if read in one way, possibly abrogate sovereign immunity, <u>Raygor</u>, 534 U.S. at 543-44; "invoke[] the outer limits of Congress' power," <u>Solid Waste Agency of N. Cook Cnty.</u> v. <u>U.S. Army Corps of Eng'rs</u>, 531 U.S. 159, 172 (2001); impinge on "a decision of the most fundamental sort for a sovereign entity," <u>Gregory</u>, 501 U.S. at 460; or "dramatically intrude[] upon traditional state criminal jurisdiction," <u>Bass</u>, 404 U.S. at 350.

-7-

concrete conflict was identified by Doe in the district court or, for that matter, in this court.

On the contrary, the government has pointed to Commonwealth v. Megna, in which the Bristol Superior Court had no hesitation in ordering that its civil contempt incarceration interrupt a pending Massachusetts sentence then being served by the contemnor. Memorandum of Decision on Civil Contempt, No. BRCR2002-03078 (Mass. Dist. Ct. Oct. 1, 2004). That court cited some of the federal cases (see note 1, above), as well as a local case from another jurisdiction, to explain the necessity for such a step in order to make the civil sanction effective.

There will be time enough to consider such a real conflict on the merits, and the contemnor's standing to raise the objection, see In re Grand Jury Investigation, 865 F.2d at 879 n.2, if and when it arises. In this case, we think the order is valid and enforceable against Doe; the state is not a party to the case and if the state should balk at the implications for Doe's state sentence, that will be a matter that can be addressed at that time, assuming that anyone is interested in doing so.

As for Liberatore, a later decision by the Second Circuit, Dien, 598 F.2d at 745, followed the general pattern of allowing suspension of a pre-existing federal sentence. While Dien did not overrule Liberatore, it did undercut aspects of the reasoning in Liberatore: the supposed rule that sentences are not

interruptible and the stress laid on the lack of a specific grant of authority in section 1826.  See Dien, 598 F.2d at 744-45. Whether the Liberatore holding would still be followed today is uncertain.

Affirmed.