In re Grand Jury Proceedings of Denise
GARMON, Appellant.

In re Grand Jury Proceedings of Court-
ney D. WASHINGTON, Appellant.

Nos. 78–1154 and 78–1233.

United States Court of Appeals,
Ninth Circuit.

April 7, 1978.

Michael J. McCabe, of Savitz & McCabe, San Diego, Cal., for appellant.

John J. Robinson, Asst. U. S. Atty., on the brief, Michael H. Walsh, U. S. Atty., San Diego, Cal., for appellee.

Before WALLACE, SNEED and KENNEDY, Circuit Judges.

SNEED, Circuit Judge:

## I.

### INTRODUCTION.

The issue in these cases is whether a civil contempt sentence can be imposed upon a witness who is already serving a criminal sentence, thereby suspending the service of the criminal sentence during the period of the contempt confinement.

In No. 78–1154, Denise Garmon was sentenced on December 20, 1977 to 18 months' confinement for a conviction of conspiracy to possess with intent to distribute a controlled substance. One day before her sentencing, an order compelling her testimony was signed by Chief Judge Schwartz of the Southern District of California. Garmon appeared before the Grand Jury on December 21 and refused to testify, despite the immunity which had been granted her. She then appeared before Judge Gordon Thompson, Jr., who ordered her to return to the Grand Jury and to answer their questions. After Garmon's second refusal, she was brought before Judge Thompson who held her in civil contempt, committed her, pursuant to 28 U.S.C. § 1826, to custody until she testified or for a period no longer than either the life of the Grand Jury or 18 months, and suspended her criminal sentence.

In No. 78–1233, Courtney Washington was convicted of the same narcotics offense and was sentenced to 18 months imprisonment on September 19, 1977. His testimony was compelled by an order signed by Chief Judge Schwartz. Twice appearing before the Grand Jury, Washington similarly refused to testify. On his second appearance before Judge Thompson, he was held in contempt and committed to custody for the same period as Garmon, and his criminal sentence was suspended during the pendency of his contempt confinement.

The issue in these cases has been examined by a number of other circuits, all of which have upheld the district judge's power to impose civil contempt upon the inmate, and thereby suspend the underlying criminal sentence. *In re Grand Jury Investigation*, 542 F.2d 166 (3rd Cir. 1976); *Martin v. United States*, 517 F.2d 906 (8th Cir. 1975); *United States v. Liddy*, 166 U.S.App. D.C. 289, 510 F.2d 669 (1974); *see United States v. Mitchell*, 556 F.2d 371, 382 (6th Cir. 1977); *Williamson v. Saxbe*, 513 F.2d 1309, 1310–11 (6th Cir. 1975); *Anglin v. Johnston*, 504 F.2d 1165 (7th Cir. 1974). The basic question which these cases

present concerns the interaction, if any, between 28 U.S.C. § 1826 and 18 U.S.C. § 3568. Subsidiary questions are whether we should resort to common law rules with respect to the modification of sentences and whether the fact that the criminal conviction is on appeal affects the jurisdiction of the court in the contempt proceeding.

## II.

### *Relationship Between Sections 1826 and 3568.*

Enacted as part of the Organized Crime Control Act of 1970, 28 U.S.C. § 1826 authorizes confinement for civil contempt when a witness before a court or grand jury refuses to testify or provide information without just cause. Confinement is limited to the life of the court proceeding or grand jury, and in any event not to exceed 18 months. Section 3568 of title 18 provides that:

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which the sentence was imposed. . . . No sentence shall prescribe any other method of computing the term.

Appellants in these two cases, as in many of the cases cited above, argue that § 3568 must be read to forbid any variation from a continuous criminal sentence, and thus to limit a judge's power to punish a witness for contempt under § 1826. Section 3568 has been interpreted in two fashions. The Eighth Circuit in *Martin v. United States, supra*, appears to harmonize sections 1826 and 3568 by noting that the specific provision for confinement for contempt overrides the more general provision for criminal sentencing of § 3568. The court concluded that a civil contempt confinement acts to interrupt a prior criminal sentence, and thus is not really a "modification" by the court of that sentence. The court noted

that § 3568 by providing for credit for time spent "in connection with the offense or acts for which the sentence was imposed", implies that no credit is to be given for time spent in connection with a *civil* contempt sentence.

The District of Columbia Circuit in *United States v. Liddy, supra*, arrived at the same result in a different fashion. It noted that there were many situations in which the running of a prison term is interrupted, postponing the date of the termination of the sentence. Two examples are a prisoner who escapes from prison and a parolee who commits offenses which lead to the revocation of his parole, requiring him to serve the portion of his sentence that remained when he was paroled. Thus § 3568 was never intended to reach cases in which a sentence would be interrupted owing to some "fault of the prisoner." A recalcitrant prison witness similarly interrupts his sentence because of his intentional refusal to testify before the grand jury.

As best we understand the legislative history, Congress intended in § 3568 to clarify the method of calculating the commencement of a sentence and the deduction for good conduct. "These provisions are very necessary to remove confusion under existing practices. There is often uncertainty as to when a sentence does commence to run and as to the date from which computation of good conduct deductions shall be computed." S.Rep. No. 803, 72d Cong., 1st Sess. (1932). The purpose of clarifying such dates was obviously to establish a clear date for release, *In re Grand Jury Investigation, supra* at 174–75 (dissent). This was a technical purpose, aimed at eliminating certain specific disparate practices with respect to those calculations. It does not follow that this section either forbids the interruption of a sentence or immunizes a prisoner from the applicable civil contempt penalties imposed pursuant to § 1826. Serving a sentence for contempt of a grand jury does not constitute the "juggling with sentences" which was the evil to which § 3568 was addressed.[1] With-

---

1. Congress was concerned, for example, with the practice of sentencing someone to a sen-

tence of a year and a day, but providing that the sentence began months before the individu-

out limiting ourselves to finding a "fault of the prisoner" exception to § 3568, we simply see no conflict between the civil contempt provisions of § 1826 and the curative purposes of § 3568. *See Martin v. United States, supra* at 909–10. Even were we to concede the two statutes do overlap, we would reach the same result based on the "principle that gives precedence to the terms of the more specific statute where a general statute and a specific statute speak to the same concern." *Simpson v. United States,* —— U.S. ——, 98 S.Ct. 909, 55 L.Ed. 70 (1978), *citing Preiser v. Rodriquez,* 411 U.S. 475, 489–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); 2A Sutherland, *Statutory Construction* § 51.05 (4th ed. 1973).

## III.

### *Common Law Power To Modify Sentence; Effect Of Appeal.*

■■■ Appellants further contend that the district judge lacked the power to change their sentences once those sentences had begun, or alternatively, that the district court lost jurisdiction over those sentences pending their appeal to a higher court. If § 1826 is not to be simply inapplicable to prisoner witnesses, the sentencing judge must have the power to suspend the initial sentence.[2] We note in this regard that, like § 1826, the federal escape statute, 18 U.S.C. § 752, sets a penalty for the offense without stating the effect of that penalty upon an ongoing criminal sentence.

■■■ We do not believe there is a need to resort to the common law rules with respect to modification of sentences to sustain the district court's power under § 1826. Moreover, our review of the cases suggests, perhaps because of the rarity of the occur-

rence, that there exists no common law rule against the interruption of a prison sentence as a result of the imposition of a contempt penalty. The single Arkansas case which states such a rule gives no authority for its conclusion, and may well have been influenced by its additional finding that the contempt punishment—solitary confinement—was an unconstitutional cruel and unusual punishment. *Williams v. State,* 125 Ark. 287, 188 S.W. 826, 827 (1916). Other statements in the cases to the effect that a prisoner has a right to serve a continuous sentence have been made in a context in which a prisoner inadvertently has been released, with the state attempting, sometimes years later, to reincarcerate him. *White v. Pearlman,* 42 F.2d 788 (9th Cir. 1930); *Lanier v. Williams,* 361 F.Supp. 944 (E.D.N.C.1973). On the other hand, cases exist which do recognize a power to interrupt the running of a criminal sentence, *e. g., Theriault v. Peek,* 406 F.2d 117 (5th Cir. 1968) (per curiam), *cert. denied,* 394 U.S. 1021, 89 S.Ct. 1644, 23 L.Ed.2d 47 (1969) (escape from prison interrupts sentence): *McDonald v. Lee,* 217 F.2d 619 (5th Cir. 1954), *vacated as moot,* 349 U.S. 948, 75 S.Ct. 893, 99 L.Ed. 1274 (1955) (second sentence for violation of conditions of military confinement interrupts running of first sentence); *Anderson v. Corall,* 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247 (1923) (time between grant of parole and its revocation not credited toward underlying sentence). Like these cases, but unlike the "false release" cases, our case presents no allegations of governmental or prosecutorial harassment, misconduct or oversight. *See Piemonte v. United States,* 367 U.S. 556, 564, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961) (dissent).

al was actually sentenced or confined, thereby making applicable parole provisions available by statute only to prisoners who had served more than one year. S.Rep. No. 803, 72d Cong., 1st Sess. 2 (1932); H.R.Rep. No. 960, 72d Cong., 1st Sess. 2 (1932), *quoted in United States v. Liddy, supra,* 166 U.S.App.D.C. at 294, 510 F.2d at 674.

**2.** On its face, § 1826 gives the court the power to commit a contemnor to prison immediately with release conditioned upon his decision to testify. The fact that alternative punishments

for contempt are possible—such as a fixed term of imprisonment to be served at the end of the prisoner's current term—is irrelevant to determining whether § 1826 is restricted implicitly by § 3568. The issue is not whether a district court has *some* power to punish a prisoner contemnor but whether the particular scheme of punishment provided by the former, creating an immediate incentive to testify before a court or grand jury while the proceeding is still going on, is inapplicable to prisoner witnesses by virtue of § 3568.

The claim that the ongoing appeal of the narcotics conviction deprives the district court of power to toll the sentence when imposing a contempt sentence need not detain us. As the Court pointed out in *Liddy*, the purpose of the ban on modification of a sentence pending an appeal is to enable the appeals court to review the conviction against a fixed and certain sentence. Tolling the criminal sentence in no way affects its length and certainty and in no way impedes the appeal. Moreover, the civil contempt proceeding is an entirely separate court action from the criminal case and should in no way be affected by the pendency of an appeal in the latter. *Martin v. United States, supra* at 910.

AFFIRMED.