**Carlos M. RAMOS, a/k/a Carlos M. Castro, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 88–713.

District of Columbia Court of Appeals.

Argued July 11, 1989.
Decided Jan. 24, 1990.

---

Steven M. Buckman, Washington, D.C., for appellant. Steven R. Kiersh and Karen L. Hochstein, Washington, D.C., were on the brief, for appellant.

Joyce J. Bang, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and Elizabeth Trosman and J. Edward Agee, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before BELSON and TERRY, Associate Judges, and MACK, Senior Judge.[*]

TERRY, Associate Judge:

Appellant Ramos, while serving a prison sentence, was called to testify at a post-trial hearing on behalf of his former co-defendant, Frank Smith. Ramos refused to testify, despite being advised by the trial court that he had no valid Fifth Amendment claim of possible self-incrimination. When he persisted in his refusal, the court held him in civil contempt, ordered that he be returned to prison, and further ordered that his ongoing sentence be held in abeyance until he purged himself of the contempt. Ramos contends that this procedure was impermissible under Superior Court Criminal Rule 35. We disagree and affirm.

I

After a jury trial Ramos and Smith were convicted of first-degree burglary while armed[1] and armed robbery.[2] Ramos was

---

[*] Judge Mack was an Associate Judge of the court at the time of argument. She was commissioned as a Senior Judge on December 1, 1989.

[1] D.C.Code §§ 22–1801(a), 22–3202 (1989).

[2] D.C.Code §§ 22–2901, 22–3202 (1989).

sentenced to consecutive prison terms of seven to twenty-one years for the burglary and two to six years for the robbery. His convictions were affirmed by this court in an unpublished memorandum opinion.[3] Thereafter his co-defendant, Smith, filed a motion to vacate his sentence under D.C. Code § 23–110 (1989), alleging that Ramos, if called, would testify that Smith was not present at the scene of the crime and would therefore exculpate him.

The trial court held a hearing on Smith's motion. At that hearing Ramos refused to give any testimony beyond his name and age, asserting that under the Fifth Amendment he had the right to avoid incriminating himself. The court informed Ramos that he could not invoke his Fifth Amendment privilege against self-incrimination because he had already been convicted of the offense with which he was charged and that conviction had been upheld on appeal. The court then told Ramos that if he continued to refuse to testify, he would be held in civil contempt, and that any time he served on the contempt citation would not count toward the sentence he had previously received and was currently serving. Ramos persisted nevertheless in his refusal to answer the questions put by the court and counsel; accordingly, the court found him in contempt. In a subsequent written order, the court directed that Ramos "be incarcerated for contempt until such time as he shall answer the said questions propounded by counsel for Smith and such other questions as may be relevant and material to Smith's claim [of alibi]," and that the time spent in custody on the contempt adjudication not be credited toward the sentence he was then serving, i.e., that his sentence be "held in abeyance during the time he (Ramos) remains incarcerated for contempt pursuant to this Order...."

Ramos now contends that it was unlawful under Superior Court Criminal Rule 35 for the trial court to interrupt his sentence in this manner. He reasons that the intervening incarceration for contempt was a "modification" of his original sentence within the meaning of Rule 35, and that because more than 120 days had passed between this court's affirmance of his convictions and the date he was held in contempt, the trial court lacked jurisdiction so to "modify" his sentence.

## II

■ The issue presented here is one of first impression in the courts of the District of Columbia: whether a trial court, consistently with Rule 35, may interrupt an ongoing sentence in order to lend coercive force to a contempt adjudication. The question has arisen in the federal courts, however, under the corresponding federal rule and otherwise, and arguments such as that made here by Ramos have been uniformly rejected.[4] The District of Columbia Circuit has held that "it is lawful for a civil contempt sentence to interrupt a criminal sen-

---

3. *Ramos v. United States,* No. 85–915 (D.C. November 30, 1987).

4. Super.Ct.Crim.R. 35(b) provides:
   *Reduction of sentence.* A motion to reduce a sentence may be made not later than 120 days after the sentence is imposed or probation is revoked, or not later than 120 days after receipt by the Court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or not later than 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The Court shall determine the motion within a reasonable time. After notice to the parties and an opportunity to be heard, the Court may reduce a sentence without motion, not later than 120 days after the sentence is imposed or probation is revoked, or not later than 120 days after receipt by the Court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or not later than 120 days after entry of any order or judgment of the Supreme Court, denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this paragraph.
   This rule is identical in substance to Fed.R. Crim.P. 35(b) as it existed before the amendment of the federal rule in 1987; thus cases construing Fed.R.Crim.P. 35 before its 1987 amendment may "guide[ ] our construction of the local rule." *Allen v. United States,* 495 A.2d 1145, 1149 (D.C.1985) (en banc) (citations omitted); *accord, e.g., Robinson v. United States,* 454 A.2d 810, 813 (D.C.1982).

tence previously imposed" and has expressly rejected the contention "that interruption of the criminal sentence violates Fed. R.Crim.P. 35...." *In re United States Senate Permanent Subcommittee on Investigations,* 211 U.S.App.D.C. 2, 9 & n. 32, 655 F.2d 1232, 1239 & n. 32, *cert. denied,* 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981), citing *United States v. Liddy,* 166 U.S.App.D.C. 289, 510 F.2d 669 (1974) (en banc), *cert. denied,* 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975). The rationale for this holding is that any other construction of Rule 35 would immunize a person currently serving a sentence from a court's contempt powers, leaving the courts unable to coerce already-incarcerated contemnors into giving testimony which is lawfully required. As the *Liddy* court recognized, if interruption of a sentence is not permitted, then a court's contempt power is nugatory; without the coercive force of incarceration, there would be no incentive whatsoever for a contemnor to comply with the court's order. *United States v. Liddy, supra,* 166 U.S.App.D.C. at 295, 510 F.2d at 675.

All the federal courts which have addressed this issue have agreed that it is permissible and proper for a court to interrupt an ongoing sentence in order to confine a person for contempt. *See In re United States Senate, supra,* 211 U.S.App. D.C. at 9 & nn. 31–33, 655 F.2d at 1239 & nn. 31–33 (citing cases); *United States v. Liddy, supra,* 166 U.S.App.D.C. at 295, 510 F.2d at 675; *United States v. Dien,* 598 F.2d 743, 744–745 & n. 2 (2d Cir.1979); *In re Garmon,* 572 F.2d 1373, 1374–1376 (9th Cir.1978) (noting that all circuits have agreed that sentences may be interrupted to impose civil contempt sanctions, and "that there exists no common law rule against the interruption of a prison sentence as a result of the imposition of a contempt penalty"); *Bruno v. Greenlee,* 569 F.2d 775, 776 (3d Cir.1978) ("district court judge has the power to interrupt a criminal sentence in an order of criminal contempt"); *In re Grand Jury Investigation,* 542 F.2d 166, 168–169 (3d Cir.1976), *cert. denied,* 429 U.S. 1047, 97 S.Ct. 755, 50 L.Ed.2d 762 (1977); *Martin v. United States,* 517 F.2d 906 (8th Cir.), *cert. denied,* 423 U.S. 856, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975); *Williamson v. Saxbe,* 513 F.2d 1309, 1310–1311 (6th Cir.1975) ("To hold that [appellant] has a right to jail-time credit under the facts of this case would interfere seriously with the power of District Courts to punish civil contempt by incarceration when the person who is guilty of contempt is under sentence for some other offense"); *Anglin v. Johnston,* 504 F.2d 1165 (7th Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1353, 43 L.Ed.2d 440 (1975); *cf. United States v. Wilson,* 421 U.S. 309, 321 n. 2, 95 S.Ct. 1802, 1809 n. 2, 44 L.Ed.2d 186 (1975) ("despite the fact that respondents were already incarcerated for substantive criminal offenses, it appears to be clear that service of their sentences could have been interrupted to compel them to serve an intervening sentence for contempt" (Rehnquist and Blackmun, JJ., concurring) (citations omitted)).

There is no dispute that the time limitations set forth in Super.Ct.Crim.R. 35 are jurisdictional. *See United States v. Nunzio,* 430 A.2d 1372, 1374 (D.C.1981); *McDaniels v. United States,* 385 A.2d 180, 182 (D.C.1978). On its face, however, Rule 35 with its jurisdictional limits has no relevance to this case. Rule 35 authorizes a trial court to reduce a sentence, correct an illegal sentence, or correct a sentence imposed in an illegal manner—but it says nothing about whether a sentence already being served may be interrupted by a period of incarceration for civil contempt. Such incarceration is neither a "correction of sentence" nor a "reduction of sentence" within the meaning of Rule 35; to the contrary, the sentence originally imposed on Ramos has not been altered in any respect, but merely interrupted. Ramos cites no authority for the proposition that Rule 35 prohibits the procedure followed in this case, nor have we found any; moreover, there is nothing in the language of the rule itself that supports his contention.

In order to ensure that trial courts may be able to use their contempt powers against persons already incarcerated, we affirm the trial court's judgment. If courts are deprived of the power to

impose the sanction of incarceration upon a finding of contempt, then holding a person such as Ramos in civil contempt becomes an empty gesture. "Courts have a right to demand," even of a person already under sentence, "full and unstinting compliance with their commands." *D.D. v. M.T.*, 550 A.2d 37, 44 (D.C.1988). Nothing in Rule 35 qualifies or limits that right.[5]

*Affirmed.*

**5.** We note that no Fifth Amendment issue is presented in this case because Ramos has not preserved the issue of whether he had a right under the Fifth Amendment to refuse to testify. In his notice of appeal Ramos indicated that whether he properly refused to testify was to be an issue on appeal. In his brief, however, Ramos abandoned his Fifth Amendment claim, failing even to suggest that his Fifth Amendment rights had been violated. Instead, Ramos argued in his brief only that the trial court lacked jurisdiction under Super.Ct.Crim.R. 35 to interrupt his ongoing sentence. Rule 28 of this court's general rules is mandatory in its edict that an appellant's brief "shall contain," *inter alia*, a statement of issues and "the contentions of the appellant with respect to the issues presented...." *See* D.C.App.R. 28(a)(3), (4), (5). Because Ramos did not comply with this rule,

his tardy attempt to raise a Fifth Amendment claim at oral argument is unavailing. *Cf. Mozingo v. United States*, 503 A.2d 1238, 1240 (D.C. 1986); *Joyner v. Jonathan Woodner Co.*, 479 A.2d 308, 312 n. 5 (D.C.1984).

Even if the issue were properly before us, we would have to hold that Ramos' Fifth Amendment rights were not infringed. Because there is nothing in the record to suggest that Ramos could have incriminated himself by exculpating Smith, the trial court committed no error in requiring Ramos to answer the questions put to him. Further, since his conviction had already been affirmed, he could no longer incriminate himself with respect to the offenses of which he was convicted. *See, e.g., United States v. Pardo*, 204 U.S.App.D.C. 263, 271–272, 636 F.2d 535, 543–544 (1980).